*84 OPINION.
McMahon :
The respondent has allowed the petitioner a deduction for depreciation of its machinery in the year 1920 at the rate of 10 per cent. Petitioner contends that it is entitled to an additional 6 per cent depreciation because the machinery was operated overtime at night. It is petitioner’s contention that the rate of 10 per cent which respondent has allowed represents the depreciation sustained by the machinery for operation for 10 hours during the daytime. Petitioner contends that its normal operation of machinery was ten hours per day, but that the night operations in 1920 constituted extra operations entitling petitioner to additional depreciation. However, the evidence discloses that from 1906 through 1920 it was normal for petitioner to operate its machinery both day and night and that ten hours per day and twelve hours per night constituted the normal operation of the plant. There is no evidence to show that the respondent did not take into consideration the night operations in arriving at the rate of depreciation, and since the petitioner has not furnished us with any evidence from which we can determine that the respondent’s determination is erroneous, such determination must be approved. See San Angelo Telephone Co., 6 B. T. A. 1189, wherein it is held that the burden is upon petitioner to prove all the elements necessary for the Board to determine a reasonable allowance for depreciation. Furthermore, there is considerable evidence to support the view that the rate of depreciation allowed by the respondent is reasonable.
The petitioner contends that for the years 1920 and 1921, the respondent erred in refusing to compute petitioner’s tax in the manner specified in section 328 of the Revenue Acts of 1918 and 1921.
It is the contention of the petitioner that there were four abnormal conditions affecting its income and capital which bring it within the provisions of section 327 of the Revenue Acts of 1918 and 1921 as follows: (1) Petitioner was practically a one-man concern, its treasurer and general manager having complete control and management of its affairs, and he and the members of his immediate family owned the controlling interest in its capital stock; (2) no salaries were paid to any of the petitioner’s officers except to the treasurer and general manager, who received as high as $12,000 per year; (3) that an unusually large percentage of petitioner’s working capital was borrowed; and (4) that certain of petitioner’s records were de- *85 stroj'ud which would, have, shown that amounts were charged to expense which should have been charged to capital account and that now it is unable to prove this by its records.
There is no proof to show that the first alleged circumstance was abnormal in the type of business in which petitioner was engaged, and there is no basis for holding that petitioner is entitled to special assessment upon this ground.
The second and third points upon which the petitioner relies are not sufficient to entitle petitioner to special assessment because there was no showing that either the salary paid by the petitioner (see New Albany Hotel Co., *1 B. T. A. 1102; Denver Powerine Co., 7 B. T. A. 1186; and Green, Matthews, Taylor Co., 19 B. T. A. 359), or the amount of borrowed capital which it employed (see Higginbotham-Bailey-Logan Co., 8 B. T. A. 566; Dibrell Bros., Inc., 18 B. T. A. 1046, and Clark Brown Grain Co., 18 B. T. A. 937), was abnormal in the character of business in which the petitioner was engaged.
We turn next to the petitioner’s fourth alleged abnormal condition. To entitle it to special assessment, the burden is upon the taxpayer to show that abnormal conditions existed affecting its capital or income. Peytona Lumber Co., 21 B. T. A. 354. Here petitioner is contending that the inability to show such abnormalities is itself an abnormality entitling it to special assessment. We do not consider the contention sound.
D. L. McDowell, secretary of the petitioner, testified that in 1908 the petitioner built an addition to its plant at Dunkirk and that the cost thereof was charged to expense. It has not been shown by the petitioner that the amount paid for this addition can not now be determined and restored to invested capital. In this state of the evidence the petitioner has not shown any right to special assessment upon this ground. Edwin M. Knowles China Co., 9 B. T. A. 1292; William B. Dana Co., 11 B. T. A. 90; Union Drawn Steel Co., 15 B. T. A. 761, and Cramer & King, 13 B. T. A. 399; affirmed in Cramer & King v. Commissioner, 41 Fed. (2d) 24. The case of J. G. Curtis Leather Co., 13 B. T. A. 1259, cited by petitioner is not in point. In that case it was shown that it was entirely impracticable to determine the amounts that should have been included in invested capital.
McDowell testified that, if the various items of capital expenditures which were charged to expense had been properly charged to capital account, the petitioner’s tax would have been reduced. However, we can not accept this ultimate conclusion of the witness. We do not know from the evidence whether the amounts not reflected in invested capital are substantial or relatively small, or whether their absence from invested capital would work upon petitioner an excep *86 tional hardship evidenced by gross disproportion between its tax computed in the ordinary manner and that computed by reference to representative corporations. See Sanford Cotton Mills, 14 B. T. A. 1210; Enameled Metals Co., 14 B. T. A. 1392; and Lowe & Campdell Athletic Goods Co., 18 B. T. A. 1134.
Nor does an aggregate of a number of conditions, each inadequate in itself, necessarily constitute a cause for special assessment. B. Hayman Co., 25 B. T. A. 736.
We hold that petitioner has failed to show that there were abnormalities affecting its income and invested capital within the meaning of the statute, and hence has failed to show its right to special assessment.

Judgment will be entered for the respondent.